# EXHIBIT A

VIRGINIA: IN THE CIRCUIT COURT FOR ROCKINGHAM COUNTY

PENNY L. BRADLEY,

        Plaintiff

v.

                              CASE NO. *CL13-01265*

ARMSTRONG AUTO SALES INC.,
a Virginia corporation
Serve: Travis Armstrong, President
      and Director
      1370 North Main Street
      Harrisonburg, VA 22802

TRAVIS ARMSTRONG
1370 North Main Street
Harrisonburg, VA 22802

and

CREDIT ACCEPTANCE CORPORATION,
a Michigan corporation
Serve: Corporation Service Company
      Bank of America Center, 16th Floor
      1111 East Main Street
      Richmond, VA 23219

        Defendants.

Filed in the Clerk's Office
Rockingham County, Va.
APR 05 2013
*[signature]* Deputy Clerk

## COMPLAINT (Jury Trial Demanded)

## INTRODUCTION

1.     In this case, Defendants worked together to defraud Plaintiff, Penny L. Bradley, in the sale of a car. Specifically, Ms. Bradley wanted to buy a vehicle only it if had a multi-year warranty. On behalf of the Defendants, Travis Armstrong represented to her that a 24 months/24,000 miles warranty was part of the sale. Defendants then charged Ms. Bradley $1,580.00 for that coverage, but never provided such coverage. As a result, when Ms. Bradley's

1

car then needed several thousand dollars worth of repairs that had been represented as covered by the warranty, Ms. Bradley learned that she had no coverage. The Defendants' fraudulent scheme violated the Virginia Consumer Protection Act (VCPA), violated the Truth in Lending Act, and constituted actual and/or constructive fraud. Ms. Bradley brings this action to recover actual damages, statutory damages, punitive damages, and attorneys' fees and costs.

## PARTIES

2.      Plaintiff is a natural person and resident of Stanley, Virginia.

3.      Defendant Armstrong Auto Sales Inc. (Armstrong Auto) is a Virginia corporation, doing business as Armstrong's Auto Sales at 1370 North Main Street in Harrisonburg, Virginia, 22802. Travis Armstrong is its president, director and registered agent.

4.      Defendant Travis Armstrong is a natural person, and is a resident of Virginia.

5.      Defendant Credit Acceptance Corporation is a publicly traded corporation incorporated in Michigan, with its principal place of business at 25505 W. Twelve Mile Road, Southfield, Michigan.

## JURISDICTION AND VENUE

6.      Pursuant to Virginia Code § 17.1-513, this Court has jurisdiction over this action because the false representations were made, and the contracts were signed, at Defendant Armstrong Auto's place of business, and the amount being sought exceeds $100.00.

## FACTS

7.      On August 21, 2012, Ms. Bradley went to Armstrong Auto to look at buying a vehicle.

8.      She wanted to buy a car that got very good gas mileage because she commutes from Stanley, Virginia to Harrisonburg, Virginia for her job.

9.      She saw a 2007 Honda Civic Hybrid, VIN JHMFA36257S010568, that was for

2

sale.

10. She liked the idea of a hybrid vehicle because of the gas mileage.

11. She discussed purchasing that car with Defendant Travis Armstrong.

12. She told him that she wanted to know about the warranty.

13. He told her that she could get a 24 months/24,000 miles warranty.

14. He also told her that she would definitely need that warranty for a hybrid because if the battery ever needed replacing then it would cost thousands of dollars.

15. She agreed to buy the car because it would come with this warranty.

16. Although the discussions with Travis Armstrong implied that the 24 months/24,000 miles coverage was part of the sales price of the car, it was actually an extra $1,580.00 charge.

17. Ms. Bradley agreed to buy the car because of the 24 months/24,000 miles warranty protection that Mr. Armstrong represented was included in the transaction.

18. Ms. Bradley bought the car on a Retail Installment Contract, a true copy of which is attached hereto marked Exhibit A. The first three pages of the attached copy of the Retail Installment Contract together comprise the front page of the original of that document. When Travis Armstrong presented Ms. Bradley with the Retail Installment Contract and other documents for signature, he placed his hand on the documents, held them down and pointed to the places for Ms. Bradley to sign or initial, never turning the pages over or allowing Ms. Bradley to take possession of them before or during the signing process.

19. As stated on that contract, Ms. Bradley provided a down payment of $1,300.00.

20. Pursuant to the express terms of the Retail Installment Contract, under the all capital and bold heading, **OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT,** Ms. Bradley was provided 24 months/24,000 miles coverage as part of the transaction.

3

21.     To ensure that Ms. Bradley knew what she was getting, Travis Armstrong had her initial between the cost of this coverage ("1,580.00") and its term ("24 MONTHS 24,000 MILES").

22.     At the time of this financing, Ms. Bradley reasonably believed that she was purchasing a car with 24 months/24,000 miles warranty coverage.

23.     At the time of the financing to Ms. Bradley, all Defendants knew that no extended warranty or service contract was being provided on the hybrid vehicle.

24.     The Retail Installment Contract states in part: " "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee." Under the terms of the Retail Installment Contract, both Armstrong Auto and Credit Acceptance Corporation are the "We" that financed the vehicle for Ms. Bradley.

25.     Credit Acceptance Corporation's business model is to provide credit to consumers through a network of "Dealer-Partners."

26.     Credit Acceptance Corporation specifically allows those "Dealer-Partners" to include as part of the financing the cost of GAP coverage and extended warranties or service contracts.

27.     Credit Acceptance Corporation maintains strict control over the process by which credit is extended.

28.     Credit Acceptance Corporation shares the profits of the financing contracts with dealers like Armstrong Auto.

29.     As part of its control over the process, Credit Acceptance Corporation reviews and approves all aspects of each financing transaction created by its "Dealer-Partner" before that transaction is approved.

30.     In addition to the charge of $1,580.00 for the 24 months/24,000 miles coverage, Defendants added $39.50 as tax on that amount.

4

31. $1580.00 plus $39.50 is $1,619.50.

32. Thus, the total amount Defendants charged for the 24 months/24,000 miles coverage listed in the credit contract was $1,619.50.

33. The amount of credit disclosed on the Retail Installment Contract was $13,339.00, at 24.99% annual interest, with 57 monthly payments of $401.93, and a total of payments of $22,901.01. (See Exhibit A and calculation sheet attached as Exhibit B).

34. Because nothing was provided in exchange for $1,619.50, this amount did not reflect the amount of any credit of which Ms. Bradley had actual use.

35. $13,339.00 minus $1,619.50 is $11,719.50.

36. Consequently, the actual amount of credit of which Ms. Bradley had actual use was $11,719.50.

37. For credit of $11,719.50 at 24.99 % that is paid in monthly payments of $401.93, the term of the loan is 44 payments plus a final monthly payment of $536.59, and a total of payments of $18,221.51. (Calculation sheet attached as Exhibit C).

38. By adding $1,619.50 that represented no value to Ms. Bradley, Defendants increased the number of months she would have to make payments by a full year. (57 minus 45 is 12).

39. By adding $1,619.50 that represented no value to Ms. Bradley, Defendants increased the finance charge that she would have to pay by $3,069.00. ($9,571.00 minus $6,502.01 is $3,069.00).

40. Of the $22,910.01 that is the Total of Payments on the Retail Installment Contract, $4,688.50 is directly attributable to the charge for the 24 months/24,000 miles coverage.

41. $4,688.50 divided by $22,910.01 is .2046.

42. Thus, over 20% of the amount that Defendants expected Ms. Bradley to pay in

5

this transaction represented money that was improperly included in the transaction.

43. Even though it knew that the 24 months/24,000 miles coverage was not actually provided to Ms. Bradley in the transaction, Credit Acceptance Corporation sought to retain a significant amount of the total principal and interest charged for it.

44. Credit Acceptance Corporation made an income of $343,100,000.00 dollars in 2013, prior to provision for income taxes.

45. In the last quarter of 2012, it had net income of $59,900,000.00 after taxes.

46. This net income is the equivalent of $651,086.90 per day in October, November, and December of 2012.

47. During this time, Ms. Bradley was contributing to Credit Acceptance Corporation's net income by making her payments of $401.93.

48. Ms. Bradley made these payments five times, for a total of $2009.65.

49. Her last payment was on January 20, 2013.

50. She then discovered that the car needed significant repairs, including the hybrid battery and/or battery pack due to severe battery pack deterioration.

51. Those repairs would cost thousands of dollars.

52. She went to Armstrong Auto and asked for the repairs to be made pursuant to the 24 months/24,000 miles coverage.

53. Because no such coverage was ever available as part of the transaction, the repairs were not performed, and Armstrong Auto refused to make such repairs.

54. The necessary repairs have now been identified by Harrisonburg Honda. (Exhibit D, dated February 22, 2013).

55. By letter from counsel dated February 27, 2013, Ms. Bradley explained the fraud, notified Armstrong Auto and Credit Acceptance Corporation that she was cancelling the transaction, and requested refund of all her payments made. (Exhibit E).

6

56. Neither Defendant has refunded, or agreed to refund, the payments.

57. Since that time, Ms. Bradley has not used the vehicle.

58. Since that time, Credit Acceptance Corporation has intentionally disabled the vehicle and made it unuseable.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Fraud/Constructive Fraud- All Defendants

59. Defendants worked together in a joint enterprise to finance the car sale.

60. For the benefit of Armstrong Auto and Credit Acceptance Corporation, Travis Armstrong misrepresented both orally and in writing that 24 months/24,000 miles coverage was included in the transaction.

61. Armstrong Auto and Credit Acceptance Corporation each authorized and ratified that misrepresentation.

62. Defendants made that misrepresentation so that Plaintiff would agree to buy the car and sign the Retail Installment Contract.

63. Plaintiff reasonably relied on that misrepresentation by signing the credit contract, by paying $1,300.00 down, and by paying the monthly payments.

64. Plaintiff was harmed by that reliance because she was never provided any 24 months/24,000 miles coverage.

65. Defendants' actions were willful, malicious, and in reckless disregard of Plaintiff's rights sufficient to justify that each of the Defendants be assessed punitive damages.

66. In the alternative to Defendants' misrepresentations having been made knowingly or intentionally, they were made innocently or negligently so as to allow for a claim of constructive fraud.

7

## SECOND CAUSE OF ACTION
### Violation of the VCPA

67.     Regarding the financing of the car, both Credit Acceptance Corporation and Armstrong Auto were suppliers and Plaintiff was a consumer in a transaction regulated by the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.*

68.     Defendants violated Va. Code Ann. § 59.1-200(A)(5), (8) and (14) by charging for coverage that was not provided.

69.     Defendants' violations were willful.

70.     In the alternative of the violations being willful, the violations were not the result of *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid a violation.

71.     If the violations were unintentional under Va. Code Ann. § 59.1-207, Plaintiff is still entitled to restitution and payment of attorney's fees and court costs.

## THIRD CAUSE OF ACTION
### Conspiracy

72.     Defendants combined together for the lawful purpose of financing car purchases, but pursued that objective in the unlawful way of misrepresenting what was being provided.

73.     Defendants combined together for the unlawful purpose of retaining significant portions of an unlawful charge.

74.     Plaintiff was harmed by the Defendants' combined actions.

75.     Defendants' actions were willful, malicious, and in reckless disregard of Plaintiff's rights sufficient to justify that each be assessed punitive damages.

## FOURTH CAUSE OF ACTION
### Violation of the Truth in Lending Act

76.     Under the definitions provided by the federal Truth in Lending Act (TILA) at 15 U.S.C. § 1602(g), Armstrong Auto was the Defendant with the initial obligation to provide

8

accurate TILA disclosures.

77.    Under TILA, the disclosure of the amount financed must show "the amount of credit of which the consumer has actual use." 15 U.S.C. § 1638(2)(A).

78.    Armstrong Auto violated the TILA because the disclosure of the Amount Financed did not reflect the amount of credit of which Ms. Bradley had actual use.

79.    On the documents provided to it, Credit Acceptance Corporation knew that this disclosure of the Amount Financed was wrong.

80.    Therefore, both Credit Acceptance Corporation and Armstrong Auto are liable for this violation of the TILA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment against the Defendants, jointly and severally, as follows:

1.    Assume jurisdiction of this case;

2.    Declare that the Retail Installment Contract is canceled and of no effect;

3.    Award actual damages under the tort claims and the VCPA claims of $20,000.00 for general compensatory damages representing Plaintiff's out of pocket expenses, her lost time, and inconvenience;

4.    Award minimum statutory damages of $500.00 for each violation of the VCPA if higher actual damages are not awarded;

5.    Award treble actual damages, or at minimum $1,000.00 for each willful violation of the VCPA;

6.    Assess punitive or exemplary damages based on the fraud and conspiracy claims in the amount of $271,286.20, representing 10 hours of the net income of one of the Defendants during the last quarter of 2012;

7.    Award statutory damages of $2,000.00 for the violation of the TILA;

9

8. Award Plaintiff her costs and reasonable attorneys' fees against Defendants in accordance with the VCPA, the TILA, and the common law of fraud and conspiracy; and

9. Award such other relief as the Court deems appropriate.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

Penny L. Bradley
By Counsel

Timothy E. Cupp  VSB No. 23017
Cupp & Cupp, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg VA  22803-0589
Phone: (540) 432-9988
Facsimile:  (540) 432-9557
e-mail: cupplaw@comcast.net

Thomas D. Domonoske, VSB No. 35434
461 Lee Avenue
Harrisonburg, Virginia 22802
(540) 442-7706
e-mail:  tomdomonoske@earthlink.net
Counsel for Plaintiff

10

## RETAIL INSTALLMENT CONTRACT

| BUYER(S) | | CREDITOR-SELLER | |
|---|---|---|---|
| NAME | Penny, L. Bradley | NAME | ARMSTRONG'S AUTO SALES INC |
| NAME | | ADDRESS | 1370 N MAIN ST |
| ADDRESS | 165 Chapel Rd. #1B | CITY | HARRISONBURG STATE VA ZIP 22802 |
| CITY STANLEY STATE VA ZIP 22851 | | ACCOUNT NO. | |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the reverse side of this Contract. The Annual Percentage Rate may be negotiable with Us.
**Description of Vehicle:** You agree to buy and Creditor agrees to sell the following Vehicle.

| New or Used | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 07 HONDA | CIVIC HYBRID 4DR | SILVER | JHMFA36257S010568 | 113040 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf. | Total of Payments The amount You will have paid after You have made all payments as scheduled. | Total Sale Price The total cost of Your purchase on credit, including Your down payment of $ 1,300.00 is |
|---|---|---|---|---|
| 24.99 % | $ 9,571.01 | $ 13,339.00 | $ 22,910.01 | $ 24,210.01 |

**Payment Schedule:** Your payment will be:

| No. of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 57 | $ 401.93 | 9/21/12 | and same date of each following month. |

**Security:** You are giving a security interest in the goods and Vehicle being purchased.
**Late Charge:** If any part of a payment is more than 7 days late, You will be charged 5% of the payment.
**Prepayment:** If You pay off early, You may be entitled to a refund of part of the Finance Charge.
**Additional Information:** See below and the other side of this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Price (including accessories and improvements to the Vehicle) | $ 11,750.00 | (1) |
| 2. Sales Tax | 399.50 | (2) |
| 3. Down Payment Calculation: **Cash Down Payment** $ 1,300.00 | | (A) |
| Trade-In Description: Gross Trade-In ........ $ N/A | | (B) |
| Make: Payoff Made by Seller | | |
| Model: to: | $ N/A | (C) |
| Net Trade-In (If negative number, insert "0" in line 3(D) and itemize difference in 5(F) below) (B-C) ...... $ 0.00 | | (D) |
| Total Down Payment (A+D) | $ 1,300.00 | (3) |
| 4. Unpaid Balance of Cash Price (1 + 2 less 3) | $ 10,849.50 | (4) |
| 5. Other Charges Including Amounts Paid to Others on Your Behalf: | | |
| *(NOTICE: A portion of these charges may be paid to or retained by Us.) | | |
| A. Cost of Required Physical Damage Insurance Paid to Insurance Company* | $ N/A | (A) |
| B. Cost of Optional Extended Warranty or Service Contract Paid to _____ * | $ 1,580.00 | (B) |
| C. Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest | $ N/A | (C) |
| D. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration | $ 60.50 | (D) |
| E. Seller's Processing Fee*(Applicable to cash and credit sales) | $ 250.00 | (E) |
| Other Charges (Seller must identify who will receive payment and describe purpose)* | | |
| F. to _____ for lien or lease payoff | $ N/A | (F) |
| G. to _____ for Optional GAP Protection | $ 599.00 | (G) |
| H. to _____ for _____ | $ N/A | (H) |
| I. to _____ for _____ | $ N/A | (I) |
| J. to _____ for _____ | $ N/A | (J) |
| K. to _____ for _____ | $ N/A | (K) |
| Total of Other Charges and Amounts Paid to Others on Your Behalf | $ 2,489.50 | (5) |
| 6. Less Prepaid Finance Charge | 0.00 | (6) |
| 7. Amount Financed - Unpaid Balance (4 + 5 less 6) | $ 13,339.00 | (7) |

**EXHIBIT A**

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. You may purchase or provide the insurance through anyone You choose who is reasonably acceptable to Us. Your choice of an insurer will not affect our credit decision or our

$ _N/A_ for _N/A_ _____ of coverage and the cost is also shown above in 5A of the Itemization. The premium is as follows:

☐ $ _N/A_ Deductible, Collision Coverage     $ _N/A_
☐ $ _N/A_ Deductible, Comprehensive Coverage     $ _N/A_
☐ Fire-Theft and Combined Additional Coverage     $ _N/A_
    _N/A_     $ _N/A_

## No Liability Insurance Included.

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You voluntarily elect to buy an optional extended warranty or contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration. _24 MONTHS_

Optional Extended Warranty or Service Contract Price $ _1,580.00_ Your Initials: _PLB_ Term: _24,000 MILES_ Co._____

**GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required to obtain credit.** GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5G of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ _599.00_ Term: _57 Months_ Provider: _Western Financial_

| _Penny L. Bradley_ | _8/21/12_ | | |
|---|---|---|---|
| Buyer's Signature | Date | Buyer's Signature | Date |

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated above. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or If You paid Us more than the amount owed to Us under this Contract, We will refund it to You. A minimum finance charge of $25 may be charged.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Starter Interruption Device and GPS.** You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**ARBITRATION NOTICE:** PLEASE SEE THE REVERSE SIDE OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.

**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

**NOTICE TO BUYER. 1.** Do not sign this Contract in blank. **2.** You are entitled to 1 true copy of the Contract You sign without charge. **3.** Keep it to protect Your legal rights.

**You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.**

Buyer's Signature: x _Penny L. Bradley_     Buyer's Signature: X _____

Seller: ARMSTRONG'S AUTO SALES INC     By: _____ Title: _Manager_

This Contract is signed by the Seller and Buyer(s) hereto this _21st_ day of _AUGUST_ , _2012_ .

**NOTICE OF ASSIGNMENT:** The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on reverse side of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT

ditions set forth on reverse side of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: ARMSTRONG'S AUTO SALES INC

By: _____

Title: _____

VIRGINIA CREDIT ACCEPTANCE CORPORATION (4-10)
© 2010 Credit Acceptance Corporation.
All Rights Reserved.

# OTHER IMPORTANT AGREEMENTS

**Your Other Promises to Us.** You promise that:

- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Default and Acceleration of the Contract.** You will be in default if:

- You fail to pay any amount due under this Contract more than 10 days late or not at all.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs.** You will pay any collection costs We incur relating to Your default. If We hire an attorney to collect what You owe, You will also pay the attorney's reasonable fee and any court costs as permitted by law.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others.

Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding.

If any part of this Contract is not valid, all other parts will remain enforceable.

WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**Interest After Maturity.** You further agree to pay interest at the Annual Percentage Rate stated on the front of this Contract or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means

*or at the highest rate permitted by applicable law.*

**Governing Law.** The terms of this Contract are governed by the law of the state of the Seller's address shown on the front of this Contract, except to the extent preempted by applicable federal law.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## ARBITRATION CLAUSE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must state Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause, except that the validity and effect of the Class Action Waiver (defined below) may be determined only by a court and not by an arbitrator. All statutes of limitation which otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

You and We voluntarily and knowingly waive any right to a jury trial. You and We agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited (this is referred to below as the "Class Action Waiver"), and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the Class Action Waiver may only be determined by a court and not by an arbitrator. In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause which describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

VIRGINIA CREDIT ACCEPTANCE CORPORATION (4-10)
© 2010 Credit Acceptance Corporation.
All Rights Reserved.

Annual Percentage Rate Calculation

Prepared by Tom Domonoske
April 1, 2013

---

Bradley
Payments as disclosed

---

| | |
|---:|:---|
| Amount Financed: | $13,339.00 |
| Finance Charge: | $9,571.01 |
| Total of Payments: | $22,910.01 |
| Amount of most common payment: | $401.93 |
| Number of Payments (Monthly ): | 57 |
| Number of days in irregular first period: | NA |
| Amount of any irregular first payment: | NA |
| Amount of any irregular final payment: | NA |
| Annual Percentage Rate (APR): | 24.9902% |
| APR (rounded to 3 places): | 24.990% |
| APR (rounded to 2 places): | 24.99% |



EXHIBIT

B

Annual Percentage Rate Calculation

Prepared by Tom Domonoske
April 1, 2013

---

Bradley
Payment with no service contract in amount financed

---

| | |
|---:|:---|
| Amount Financed: | $11,719.50 |
| Finance Charge: | $6,502.01 |
| Total of Payments: | $18,221.51 |
| Amount of most common payment: | $401.93 |
| Number of Payments (Monthly ): | 45 |
| Number of days in irregular first period: | NA |
| Amount of any irregular first payment: | NA |
| Amount of any irregular final payment: | $536.59 |
| Annual Percentage Rate (APR): | 24.9902% |
| APR (rounded to 3 places): | 24.990% |
| APR (rounded to 2 places): | 24.99% |

EXHIBIT

C

# Harrisonburg

www.harrisonburgautomall.com

**We treat you right.**

# Honda

2675 S. Main Street
Harrisonburg, VA 22801



Phone: (540) 433-1467
1-800-433-1987

| CUSTOMER NO. 112925 | ADVISOR PAUL | 1010 | TAG NO. 3 | INVOICE DATE 02/22/13 | INVOICE NO. HOCS224474 |
|---|---|---|---|---|---|

| | LABOR RATE | LICENSE NO. PH1236 | MILEAGE 128,997 | COLOR SILVER/ | STOCK NO. PH1236 |
|---|---|---|---|---|---|

PENNY BRADLEY
165 CHAPEL RD APT 1B
STANLEY, VA 22851

| YEAR / MAKE / MODEL 07/HONDA/CIVIC HYBRID/4DR SDN HYB CV | DELIVERY DATE 05/04/12 | DELIVERY MILES 108,238 |
|---|---|---|

| VEHICLE I.D. NO. J H M F A 3 6 2 5 7 S 0 1 0 5 6 8 | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|

| R.T.E. NO. | P.O. NO. | R.O. DATE 02/22/13 |
|---|---|---|

| RESIDENCE PHONE 540-244-8036 | BUSINESS PHONE | COMMENTS |
|---|---|---|

**LABOR & PARTS**

J# 1 03HOZCEL        *CHECK ENGINE LIGHT: HOURS:        TECH(S):890                64.95
        CUST STATES THE CHECK ENGINE LIGHT IS COMING ON
        LIGHT IS NOT CURENTLY ON
        TECH FOUND CODE P0A7F - SEVERE BATTERY PACK DETERIORATION
        ESTIMATE TO REPLACE BATTERY IS 2423.34 PLUS TAX

                                JOB #  1 TOTAL LABOR & PARTS        64.95

J# 2 01HOZGC        GENERAL CHECKOVER  HOURS:        TECH(S):890                0.00
        CUST STATES TO PLEASE GIVE THE VEHICLE A GENERAL LOOKOVER
        DURING CHECKOVER TECH FOUND CABIN AIR FILTER NEEDED TO BE
        REPLACED, RIGHT FRONT INNER TIE ROD HAS PLAY, ALL FOUR TIRES
        SHOULD BE REPLACED SOON AND SHOW WEAR THAT COULD BE AN
        ALIGNMENT ISSUE, FRONT COMPLIANCE BUSHINGS ARE STARTING TO
        TEAR

                                JOB #  2 TOTAL LABOR & PARTS        0.00

**TOTALS**

```
********************************************
*                                          *
* [ ] CASH    [ ] CHECK   CK NO. [ 2202 ]  *
*                                          *
* [ ] VISA  [ ] MASTERCARD  [ ] DISCOVER   *
*                                          *
*    [ ] OTHER     [ ] CHARGE              *
*                                          *
********************************************
```

| | |
|---|---|
| TOTAL LABOR.... | 64.95 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **64.95** |

THANK YOU FOR YOUR BUSINESS!!

EXCELLENT SERVICE IS OUR MISSION!

_____
CUSTOMER SIGNATURE

**TERMS: STRICTLY CASH
UNLESS ARRANGEMENTS MADE**

I hereby authorize the repair work herein set forth to be done along with the necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft or any other cause beyond your control or for any delays caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you and/or your employees permission to operate the vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above vehicle to secure the amount of repairs thereto.

**DISCLAIMER OF WARRANTIES**

Any warranties on the product sold hereby are those made by the manufacturer. The seller hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products.

**WE WANT
AND APPRECIATE YOUR BUSINESS!**

**Please see reverse side
for survey description.**

EXHIBIT
D

# CUPP & CUPP, P.C.

### ATTORNEYS AT LAW

TIMOTHY E. CUPP

JENIFER D. CUPP

1951-D EVELYN BYRD AVENUE

POST OFFICE BOX 589

HARRISONBURG, VIRGINIA 22803-0589

TELEPHONE (540) 432-9988

FACSIMILE (540) 432-9557

cupplaw@comcast.net

February 27, 2013

Credit Acceptance Corporation
Attn: Corporate Legal
25505 West Twelve Mile Road, Suite 3000
Southfield, Michigan 48034-8339

Armstrong Auto Sales, Inc.
1370 North Main Street
Harrisonburg, Virginia 22802

  Re:  Penny L. Bradley car transaction; Account No. 48860171;
     Cancellation of Sale and Demand for Return of Payments

Gentlemen and Ladies:

  I, along with Thomas Domonoske (also of Harrisonburg, Virginia) represent Penny Bradley regarding her car purchase transaction with Armstrong Auto Sales, Inc. referenced in the enclosed copy of the Buyer's Order. As a result of representations made to Ms. Bradley when she purchased this hybrid car on August 21, 2012, she specified that she only wanted the car if it came with a warranty covering, among other things, the hybrid operating system, including the battery. Armstrong Auto promised her that it could get her a two year/24,000 mile warranty which would cover these systems. The Buyer's Order shows that such a service contract providing such a warranty was part of the transaction.

  Actually, because the car is a hybrid, the service contract that Armstrong Auto promised her and for which it charged her never applied to this car. Armstrong knew that the service contract did not apply and simply misrepresented that it did. (See enclosed copy of front of the service contract.) Ms. Bradley recently has learned that the hybrid battery is corroded, has severe battery pack deterioration and needs to be replaced at significant expense. She further has just recently learned that the service contract she was sold does not cover the problem. She has asked Armstrong Auto to fix the problem, but it has not done so and has stopped communicating with her.

  The above facts cannot seriously be disputed and Credit Acceptance knows that the warranty never took effect. On these facts, Armstrong Auto's actions violate the Virginia Consumer Protection Act and the Uniform Commercial Code, and amount to fraud. This letter is notice of this dispute and these violations of law. Under the UCC, Ms. Armstrong hereby revokes her acceptance of the vehicle, and she also rescinds the transaction under the Virginia Consumer Protection Act and because of the fraud. These

**EXHIBIT**

claims are asserted against both Credit Acceptance Corporation and Armstrong Auto
Sales. At this point, Ms. Bradley will deliver the car to Armstrong Auto Sales in
exchange for the return of all her payments and the Retail Installment Sales Contract
marked canceled. Until such time as these payments are returned and the Retail
Installment Sales Contract canceled, she asserts the security interest in the car allowed by
Va. Code Ann. § 8.2-711(3).

Consistent with this cancellation, Ms. Bradley also requests that all credit
reporting about this transaction be removed. Specifically, any credit reporting agency that
has been notified about this transaction should now be notified to delete the trade line
entirely. Most importantly, because Ms. Bradley has canceled this transaction, no
negative reporting should be made about this account. Please consider this request a
dispute under 15 U.S.C. § 1681s-2.

Finally, please address all communications about this matter to me and I will
coordinate with Ms. Bradley for the return of the vehicle upon compliance with the above
described terms.

Very truly yours,

Timothy E. Cupp

Enclosures
Copy: Penny L. Bradley
        Thomas D. Domonoske, Esquire

**VIRGINIA:**
             **IN THE CIRCUIT COURT FOR ROCKINGHAM COUNTY**

PENNY L. BRADLEY                          )
                                         )
                                         )
              Plaintiff,                  )
                                         )
        v.                                )        Case No. CL13-01265
                                         )
ARMSTRONG AUTO SALES, INC., et al.        )
                                         )
              Defendants.                 )
                                         )

                 <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

TO:     THE CLERK OF THE CIRCUIT COURT
        FOR ROCKINGHAM COUNTY, VIRGINIA

        Pursuant to 28 U.S.C. § 1446(d), Defendant Credit Acceptance Corporation hereby gives

written notice that a Notice of Removal of the above-captioned action from this Court to the

United States District Court for the Western District of Virginia was filed on May 2, 2013, in

said United States District Court. A copy of the Notice of Removal is attached.

                                   _____
                                   Constantinos G. Panagopoulos (VA Bar No. 33356)
                                   BALLARD SPAHR LLP
                                   1909 K Street, NW, 12th Floor
                                   Washington, DC 20006-1157
                                   Telephone: (202) 661-2202
                                   Facsimile: (202) 661-2299
                                   cgp@ballardspahr.com

Dated: May 2, 2013                 Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that I have this 2nd day of May 2013, caused the foregoing Notice of Filing

Notice of Removal to be served by first-class mail, postage prepaid, upon:

Timothy E. Cupp
Cupp & Cupp, P.C.
1951-D Evelyn Byrd Avenue
P.O. Box 589
Harrisonburg, VA 22803-0589

Thomas D. Domonoske
461 Lee Avenue
Harrisonburg, VA 22802

Armstrong Auto Sales
c/o Travis Armstrong, President and Director
1370 North Main Street
Harrisonburg, VA 22802

Travis Armstrong
1370 North Main Street
Harrisonburg, VA 22802

Constantinos G. Panagopoulos